UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RYAN DAVIS,

       Petitioner,

v.                                                                  Case No:   2:12-cv-659-FtM-38CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.[1]

_____/

### OPINION AND ORDER[2]

This matter comes before the Court upon a petition for habeas corpus relief filed

pursuant to 28 U.S.C. § 2254 by Ryan Davis ("Petitioner") who is presently confined at

the Liberty Correctional Institution in Bristol, Florida (Doc. 2, filed December 10, 2012).

Petitioner attacks the convictions entered by the Twentieth Judicial Circuit Court in Lee

_____

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted).   In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

[2] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

County, Florida for three counts of aggravated battery with a weapon.  *Id.*   Respondent filed a response to the petition (Doc. 16).   Petitioner filed a reply (Doc. 28).

Petitioner raises eight claims in his petition.   Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History

On July 14, 2005, Petitioner was charged by information with three counts of aggravated battery (Ex. 1).[3]   After a jury trial, Petitioner was found guilty on all three counts with a specific finding that he had used a weapon (Ex. 5).   He was sentenced to concurrent terms of 20 years in prison on each count (Ex. 6; Ex. 7 at 49).   Florida's Second District Court of Appeal *per curiam* affirmed Petitioner's convictions and sentences on February 12, 2010 (Ex. 14).

On January 18, 2011, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") in which he raised ten claims of ineffective assistance of counsel (Ex. 15).   The motion was denied by the post-conviction court (Ex. 20), and Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 24). Mandate issued on November 29, 2012 (Ex. 25).

---

[3] Unless otherwise indicated, citations to exhibits or appendices are to those filed by Respondent on July 2, 2013 (Doc. 17).   Citations to the trial transcript, located in Respondent's Exhibit 30 will be cited as (T. at ___).

Petitioner filed a state habeas corpus petition on July 5, 2011 in which he raised two claims of ineffective assistance of appellate counsel (Ex. 27).   The petition was denied on September 21, 2011 (Ex. 28).

Petitioner signed the instant federal habeas petition on December 7, 2012 (Doc. 2).

## II.   Governing Legal Principles

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.   *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).   Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S.

70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state

court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).   Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (same).

### B.    Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.   *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."   *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### A.    Claim One

Petitioner asserts that trial counsel was ineffective for failing to call Kaitlyne Byrne ("Byrne") as a defense witness at trial (Doc. 2 at 5).   Petitioner asserts that Byrne would have testified that: prior to the fight, "multiple people were showing aggression" towards Petitioner; more than twenty or thirty "Cape" kids attacked Petitioner and his three friends;

no additional cars showed up with Petitioner's friends during the fight; Petitioner told her

that he was "jumped"; Petitioner told her that he picked up something from the ground;

Petitioner never bragged about the fight in her presence; after the fight he was next to her

as he ran back to the truck; and that she was friends with both Petitioner and the victims.

*Id.* at 6.

Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the

claim as follows:

> As to Ground 1, Defendant argues that counsel was
> ineffective for failing to call Kaitlyne Byrne as a witness at trial.
> Defendant argues that Ms. Byrne was on the witness list, but
> on the day of trial, counsel stated he would only call
> Defendant. Copies of the witness list, and an affidavit by
> Defendant's mother, submitted by Defendant with his motion,
> are attached. Defendant states that counsel told him no other
> witnesses were necessary, and that it was more desirable to
> put on only a minimal defense. Defendant concedes he
> agreed with this trial strategy. Now, however, Defendant
> believes Ms. Byrne's testimony would have corroborated his
> own testimony, and contradicted the testimony of the State's
> witnesses. Defendant contends that Ms. Byrne was an
> "uninterested" witness, and her testimony would have been
> given more weight by the jury. Defendant believes Ms. Byrne
> would have testified that there were 20 people fighting
> Defendant and his three friends, that no cars showed up with
> reinforcements for Defendant, that she heard Defendant say
> he got jumped and picked something up, and that many
> people at the party were aggressive towards Defendant
> before the fight.
>
> While generally questions of trial strategy require an
> evidentiary hearing to determine, here, Defendant concedes
> counsel's advice to put on a minimal defense was trial
> strategy, and concedes in his motion that he consented to that
> trial strategy. Further, counsel stated on the record that he
> would not be calling any defense witnesses other than
> Defendant (T. 6-7). In this case, trial strategy is clear. Where
> Defendant consented to the trial strategy, counsel cannot be
> ineffective. Stein v. State, 995 So. 2d 329, 337 (Fla. 2008);
> Gamble v. State, 877 So. 2d 706, 714 (Fla. 2004); Nixon v.
> Singletary, 758 So. 2d 618, 623 (Fla. 2000). Defendant has

not established that this strategy constituted deficient performance on the part of counsel. The strategy of a minimal defense appears to be an attempt to focus on the defense of self-defense and Defendant's contention that his use of deadly force was justified, rather than to dispute the facts presented by the State. Contrary to Defendant's allegation that counsel did not consider any alternative courses of action, the defense witness list refutes this allegation. By listing nine potential defense witnesses, it appears that counsel had considered the alternative course of action of calling those witnesses to dispute the State's case.

In addition, counsel may be ineffective for failing to call a witness if that witness might have cast doubt on Defendant's guilt. Gutierrez v. State, 27 So. 3d 192 (Fla. 5th DCA 2010). It does not appear that Ms. Byrne's testimony would have cast doubt on Defendant's guilt. Defendant testified as to his version of events, and his belief that he had to use deadly force to protect himself from serious harm during the fight. While not called by the defense, one of the witnesses listed on the defense witness list, Kyle Jennings, was called by the State. Mr. Jennings' testimony did corroborate Defendant's testimony. The Court notes that in her deposition, Ms. Byrne testified that Defendant had a temper and got into frequent fights, that her memory of events was "kind of blurry" and that her "memory is shot." Ms. Byrne testified in deposition that she was getting the vehicle and did not see details of the fight, but saw 30 people fighting, and believed that 30 people were fighting Defendant and his three friends. She recalled Defendant stating that he picked something up, but he did not say anything else. Relevant portions of Ms. Byrne's deposition are attached. Had Ms. Byrne testified as Defendant believed, and consistent with her deposition, her testimony would have been cumulative to that of Defendant and Mr. Jennings. Even if alternate witnesses could provide more detailed testimony, trial counsel is not ineffective for failing to present cumulative evidence. Darling v. State, 966 So. 2d 366 (Fla. 2007); Maharaj v. State, 778 So. 2d 944, 957 (Fla. 2000). Ms. Byrne's cumulative testimony would not have cast doubt on Defendant's guilt, since she did not have a clear memory of the events, and did not see details of the fight. Defendant has failed to allege any facts that, if true, would establish either prong of Strickland.

(Ex. 20 at 2-4) (internal citations to the record omitted).    Florida's Second District Court

of Appeal *per curiam* affirmed the post-conviction court's rejection of this claim (Ex. 24).

Petitioner now argues that the state court erred under *Florida v. Nixon*, 543 U.S. 175, 178 (2004) when it concluded that Petitioner's consent to his attorney's strategic decision not to call Byrne "barred his claim of ineffective assistance as a matter of law." (Doc. 28 at 4).    Petitioner overstates the post-conviction court's ruling on this issue.    At no point did the post-conviction court conclude that Petitioner's acquiescence to counsel's strategy was dispositive of this claim.   Although the post-conviction court did state that "[w]here Defendant consented to the trial strategy, counsel cannot be ineffective," the post-conviction court further explained that Petitioner "has not established that this strategy constituted deficient performance on the part of counsel" and the court spent two additional pages detailing how it reached this conclusion (Ex. 20 at 2-4).   Moreover, in *Nixon*, the United States Supreme Court concluded that a defense counsel's <u>failure</u> to obtain consent to a course of strategy does not automatically render counsel's performance deficient. 543 U.S. at 189.   *Nixon* does not stand for the proposition that a post-conviction court errs under *Strickland* merely by considering a defendant's acquiescence to counsel's strategic decisions.

Petitioner also urges that the post-conviction court unreasonably concluded that "Byrne's testimony would have been unhelpful because she testified that Petitioner was prone to violence." (Doc. 28 at 7).   Petitioner argues that Byrne clarified that Petitioner's prior fights were "nothing big at all" and that Petitioner was not the kind of boy who "just likes to fight." *Id.*   Petitioner states that "[t]o take from this that Witness Byrne testified that Petitioner was violent was an unreasonable determination of fact." *Id.* at 8.   Again, the Court notes that Petitioner misstates the post-conviction court's order.   The state court did not conclude that Byrne testified that Petitioner was violent; rather it concluded

that "Ms. Byrne testified that Defendant had a temper and got into frequent fights." (Ex.

20 at 3).   This conclusion is supported by the record.    At her deposition, Byrne was

asked to talk about what happened prior to the fight.    She testified as follows:

> BYRNE:    We are all at the party.   Ryan – if you know Ryan, he's got a little bit of temper, but that's just Ryan, redneck, you know.
>
> STATE:    When you say that, what do you mean?
>
> A.    Well, he's just kind of like very intimidating to people who know who he is.
>
> Q.    Have you ever seen him involved in fights or anything like that before?
>
> A.    Yeah. Stupid, like, high school fights at a party. But nothing big at all.
>
> Q.    But you've seen him get into fistfights before?
>
> A.    Yeah.
>
> Q.    At these kind of parties?
>
> A.    Yeah.
>
> Q.    So he has a short fuse, sort of?
>
> A.    I don't want to say that, because, then again, I don't know if was like alcohol speaking or anything else, so . . .
>
> Q.    But you've definitely seen him involved in some fights before?
>
> A.    Yes.

(Ex. 3 at 5-6).   Byrne later testified that Petitioner did not have a problem with fighting

and could "defend his own very well." *Id.* at 13.   The post-conviction court's conclusion

that Byrne testified that Petitioner had a temper and got into frequent fights was not an

unreasonable determination of the facts.

Equally unavailing is Petitioner's argument that it "was unreasonable [for the post-conviction court] to find that [Byrne's] hazy memory on [] two minor details made her an unsuitable witness." (Doc. 28 at 9).   When asked at her deposition to clarify details of what had happened at the party, Byrne testified that "it's kind of blurry. It happened three years ago[,]" and "my memory is kind of shot." (Ex. 3 at 5-6, 12).   She also testified that she had not actually witnessed most of the altercation because she had gone to get the car, and she was "in the car, getting it, the whole time." *Id.* at 16, 18-19.   She never actually witnessed anyone do anything to Petitioner other than throw a bottle at him. *Id.* at 19, 22.   Petitioner argues that Byrne's testimony would have shown that "there was no discord and that Petitioner and his friends were leaving the party when one of the victims threw a beer bottle at Petitioner, who had not provoked the attack[.]" (Doc. 28 at 12).   However, Petitioner testified at trial that, as he was leaving the party, he turned around and started arguing with Jason DiMatteo ("DiMatteo") who then threw a beer bottle at him (T. at 338).    The post-conviction court did not unreasonably conclude that Byrne's testimony would not have cast doubt on Petitioner's guilt.

This Court's authority to grant relief is constrained by the AEDPA to situations where the state court's decision was either contrary to clearly established federal law, or based upon an unreasonable determination of the facts.   Petitioner has not made this showing.   However, even if this Court owed no AEDPA deference to the state court's adjudication of this claim (a finding not made by this Court), Petitioner cannot prevail on this claim.   The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (calling witnesses is a strategic choice);

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess"); *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel").   It is virtually certain that the state would have used Byrne's testimony that Petitioner was frequently involved in fights to paint him as a hot-head with a violent temper.   Reasonable counsel might well have determined that the best prospect for acquittal lay in presenting evidence showing Petitioner as a victim, rather than presenting testimony from a witness who admitted not actually seeing most of the fight and who believed that Petitioner had a propensity for getting involved in physical altercations.   Competent trial counsel could have foregone presenting Byrne as a witness. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").   Petitioner is not entitled to habeas relief on Claim One.

**B.   Claim Two**

Petitioner asserts that counsel was ineffective for failing to request a special defense jury instruction that clarified that his duty to retreat did not start until he armed himself (Doc. 2 at 9; Doc. 28 at 20).   Petitioner asserts that "[b]ecause the standard instruction implied to the jury that Petitioner had to retreat prior to use of deadly force, it was unreasonable not to request a special instruction that addressed that particular facet of the standard instruction." (Doc. 28 at 20).

Petitioner raised this claim in his Rule 3.850 petition, and the post-conviction court denied the claim on the grounds that counsel *had* requested that the standard jury instruction be modified to clarify the charge (Ex. 20 at 6).   The court noted that Petitioner was not entitled to a special jury instruction because "[t]he standard jury instruction given was the law at the time of the offense relating to Defendant's theory of defense, and was not misleading or confusing." *Id.* at 8.   The post-conviction court also noted that "any substantive challenges to jury instructions should have been raised on direct appeal, and are therefore procedurally barred in 3.850 motions." *Id.* at 7.   Finally, the post-conviction court concluded that Petitioner could not demonstrate prejudice from the lack of a special jury instruction because there was sufficient evidence presented for the jury to find him guilty. *Id.* at 8.

The state court's denial of this claim is supported by the record.   At the charge conference, defense counsel argued that the "duty to retreat" instruction was misleading (T. at 397).   The trial court disagreed, and stated that the instruction would be read "as currently drafted by the State." *Id.* at 399.   The following duty to retreat instruction was read to the jury:

> The defendant cannot justify the use of force likely to cause death or great bodily harm unless he used every reasonable means within his power and consistent with his own safety to avoid the danger before resorting to that force.
>
> The fact that the defendant was wrongfully attacked cannot justify his use of force likely to cause death or great bodily harm if, by retreating, he could have avoided the need to use that force.
>
> However, if the defendant was placed in a position of imminent danger of death or bodily harm and it would have increased his own danger to retreat, then his use of force likely to cause death or great bodily harm was justifiable.

*Id.* at 468.   Petitioner does not claim that this is an inaccurate statement of Florida law or of the standard Florida jury instructions on the duty to retreat.   Accordingly, trial counsel was not ineffective for allowing the instruction to be read.   *Elledge v. State*, 706 So. 2d 1340 (Fla. 1997) (holding that the standard jury instructions are presumed to be correct); *Mendyk v. State*, 592 So.2d 1076, 1080 (Fla. 1982) ("[w]hen jury instructions are proper, the failure to object does not constitute a serious and substantial deficiency that is measurably below the standard of competent counsel"), *receded from on other grounds*, *Hoffman v. State*, 613 So.2d 405 (Fla. 1992); *Funchess v. Wainwright*, 772 F.2d 683, 691 (11th Cir. 1985) (recognizing that the Florida Supreme Court approves the standard jury instruction and its interpretation of state law is not assailable in a federal habeas corpus proceeding therefore counsel was not ineffective for allowing the standard instruction to be given instead of a special instruction).

Nor can Petitioner demonstrate that he suffered prejudice from the absence of further instruction on the duty to retreat.   Under the law in effect at the time of Petitioner's arrest, a person under attack had a duty to retreat and "must have used all reasonable means in his power, consistent with his own safety, to avoid the danger[.]"   *Jenkins v. State*, 942 So. 2d 910, 914 (Fla. 2d DCA 2006).   Even if, as Petitioner asserts, he had no duty to retreat from the verbal altercation with the victims until he armed himself with a knife (a proposition for which he cites no authority), testimony was presented at trial that Petitioner was armed with the knife before the bottle was thrown and before the melee began (T. at 123).[4]   Petitioner was already retreating and near his vehicle when party-

---

[4] In contrast, Petitioner testified that he found the knife on the ground *during* the fight (T. at 340).

goers allegedly verbally goaded Petitioner by yelling "something vulgar" at him. *Id.* at 122. Instead of retreating, Petitioner stopped, turned around, and confronted the crowd. *Id.* at 124, 128, 158-59, 203-05, 234-35.   When DiMatteo threw a bottle at Petitioner, he chased him down, ultimately ending up on the ground atop DiMatteo. *Id.* at 125.   As a result of the fight that ensued, three people were stabbed.   Evidence was presented that none of the fighting teenagers had weapons, except for Petitioner.   Nothing in the evidence suggests that a special jury instruction would have resulted in a different outcome in this trial.   Accordingly, Petitioner has not demonstrated prejudice from counsel's failure to suggest such.

The post-conviction court's adjudication of this claim was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.   Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

### C.     Claim Three

Petitioner alleges that counsel was ineffective for failing to object to a confusing jury instruction (Doc. 2 at 13).   Specifically, he asserts that when the trial court read the "justifiable use of force" instruction to the jury, it properly used the conjunctive "or" between the names of the three victims. *Id.* at 14.   However, the written instructions used "and" between the victims' names. *Id.*   Petitioner asserts that "it is more than likely that the jury relied on those confusing and misleading instruction[s] in finding Petitioner guilty." *Id.*

Petitioner raised this claim in his Rule 3.850 motion.   The post-conviction court recognized the disparity between the oral and written jury instruction, but denied the claim on the ground that "any substantive challenges to jury instructions could or should have

been raised on direct appeal." (Ex. 20 at 9).   The post-conviction court also recognized

that the instruction, as read, constituted the correct instruction, but concluded that

Petitioner could not demonstrate prejudice from any alleged error because:

> [T]he deadly force jury instruction as read was proper, and the jury was told by the prosecutor during closing that it had to evaluate the charges and defenses separately for each victim. There is no indication that the jury was confused as to its duty. Defendant had a full opportunity to present his defense, which the jury chose not to believe.   There was sufficient other evidence for the jury to find Defendant guilty, and no reasonable probability of a different outcome even had the written deadly force jury instruction used "or" in place of "and." Defendant has failed to allege any facts that, if true, would establish either prong of <u>Strickland</u>.

(Ex. 20 at 9) (citations to the record omitted).   Florida's Second District Court of Appeal

*per curiam* affirmed (Ex. 24).   A review of the record supports the state court's

conclusions.

During its charge to the jury, the trial court read the following instruction to the jury

in regards to the justifiable use of deadly force:

> A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another.
>
> However, the use of deadly force is not justifiable if you find Ryan Scott Davis initially provoked the use of force against himself, unless the force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or bodily harm and had exhausted every reasonable means to escape the danger, **other than using deadly force on Jonathan Feltman or Brandon Kucia or Thomas Stella.**

(T. at 467) (emphasis added).   In contrast, the last clause of the written instructions given

to the jury read "other than using deadly force on Jonathan Feltman, Thomas Stella **and**

Brandon Kucia." (Ex. 4 at 84) (emphasis added).   Even if the jury considered the use of

"and" between the victims' names instead of "or" (as was properly read by the trial judge), it would not have resulted in prejudice.   Rather, it would have made it *more* difficult for the jury to convict Petitioner because it would have to first conclude that Petitioner's use of deadly force was unjustified against <u>all</u> of the victims before it could have convicted Petitioner on any of the counts.   By finding Petitioner guilty on all three counts, the jury concluded that Petitioner's use of deadly force was unjustified against all of the victims. *Compare Miller v. State*, 918 So. 2d 415 (Fla. 2d DCA 2006) (concluding that an "and/or" error can constitute a fundamental error if it lessens the burden of proof for a conviction). Affording the proper AEDPA deference to the state court's conclusion that Petitioner could not demonstrate prejudice from the use of "and" in the "justifiable use of force" jury instruction, Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

> **D.    Claim Four**

Petitioner asserts that trial counsel was ineffective for failing to object to certain statements made by the prosecutor during closing argument (Doc. 2 at 16).   Specifically, Petitioner asserts that the prosecutor: misstated the state witnesses' testimony; inaccurately summarized the jury instructions; told the jury that Petitioner threatened to "start beating people up"; quoted the opinion of a prejudiced member of the jury panel; improperly bolstered witness testimony; improperly attacked Petitioner's credibility; and stated a personal opinion of Petitioner's guilt. *Id.* at 17-21.

Petitioner raised these claims in his Rule 3.850 motion, and the post-conviction court denied each claim as unsupported by the record.   Specifically, the court stated that each of the prosecutor's statements were fair comments on the evidence and that

defense counsel had no basis on which to object (Ex. 20 at 4).   Florida's Second DCA *per curiam* affirmed (Ex 24).

Petitioner does not explain how the state court's denial of most of these claims was contrary to *Strickland* or based upon an unreasonable determination of the facts. Rather, he focuses solely upon the post-conviction court's rejection of Petitioner's assertion that counsel was ineffective for failing to object to the prosecutor's claim that "'you can't provoke a fight and then proclaim self-defense later' and the statement that a juror had been 'exactly right' in *voir dire* when he said that self-defense does not allow one to "bring a bat to a fist fight," adding, "that's what the law is.'" (Doc. 28 at 21-22). Petitioner asserts that these comments were inaccurate statements of the law, noting "it is entirely legal to bring a proverbial 'bat' to a fistfight – in this case, a knife – as long as the State does not disprove beyond a reasonable doubt that a defendant reasonably believed that he was in imminent danger of death or great bodily harm." *Id.* at 22.

When viewed in context of the prosecutor's entire closing argument, this Court concludes that Petitioner misstates the state's closing argument.   During closing argument, the prosecutor argued

> One of the things I anticipate [the judge] is going to tell you is, the use of deadly force is not justifiable if you find Ryan Scott Davis initially provoked the use of force, **unless the force asserted to the defendant is so great, he reasonably believed he was in imminent danger of death and he had exhausted every reasonable means to escape the danger other than using the deadly force on Jonathan Feltman, Tom Stella, and Brandon Kucia.**
>
> So in other words, you can't provoke a fight and then proclaim "self defense" later.

(T. at 414) (emphasis added).   Given that the prosecutor clarified that deadly force was justified if a defendant reasonably believed he was in imminent danger and had

exhausted every reasonable means to escape, competent counsel could have declined to object to the prosecution's failure to repeat that statement. *Chandler*, 218 F.3d at 1315 (11th Cir. 2000).   Likewise, the prosecutor continued to argue that Petitioner had provoked the encounter that lead to the stabbing:

> The reason I point this out is because you are going to hear from the judge that the use of deadly force is not justifiable if you find Ryan Scott Davis initially provoked the use of force against himself, **unless the force asserted toward the defendant was so great, that he reasonably believed he was in imminent danger of death or great bodily harm.**
>
> This was a fist fight, folks.   No one came out with a bat or knife or gun.   This was just a fist fight.   He escalated it to the next level when he pulled the knife on Jason DiMatteo.
>
> We all have common sense when we think about this issue of self-defense.   It came up during jury selection.   Mr. Viacava was asking you all about self-defense.   One of your [prospective] jurors, Mr. Bernstein, sitting in the front row, first chair, he said, "Well, I believe in self-defense, but the force needs to be equal.   In other words, you can't bring a bat to a fist fight."   That was his exact quote.   That's exactly right. That's what the law is.   You can't provoke the use of force against yourself and then turn around and claim self-defense. It doesn't work that way.

(T. at 420-21) (emphasis added).   Again, competent counsel could have decided against objecting to the prosecutor's statement that a defendant cannot provoke the use of force and then claim self-defense, given that the "imminent danger" qualifier was explained to the jury only a few sentences earlier.

Moreover, Petitioner cannot show prejudice from defense counsel's failure to object.   After defense counsel's closing argument, the prosecutor further argued:[5]

---

[5] The state was allowed to divide its time between an opening argument and rebuttal argument (T. at 404).

But with self-defense, it is all about justifiable use of deadly force.   It is about the defendant's mind at the time, and it is not "it is possible they might do something" or "this could happen" and this and that.

I'm talking about imminent fear of death or great bodily harm. If you are afraid of getting punched, you can't turn around and stab somebody.   That's not what justifiable use of deadly force says.   That's not what the law in the State of Florida says.   Being afraid of getting hurt or punched, that's not good enough.   You cannot respond with deadly force, unless and up until you have imminent fear of death or great bodily harm. "Imminent", as in, "it is going to happen."   It's not "possibly" or "maybe" or "can", as [defense counsel] eluded to.   It is going to happen.

. . .

Defense counsel would have you believe – he said they started it, they got what they deserved. That's not the case. He escalated it.   This defendant escalated it.   He escalated it when he first pulled out the knife and started stabbing these kids in the middle of a fist fight.   There was no imminent fear of death or great bodily harm.   If you find that beyond a reasonable doubt, then your verdict must be guilty as to all three counts.

(T. at 449-50, 458).   Therefore, even if counsel's initial statements regarding bringing a

knife to a fistfight were somehow misleading or confusing, the prosecutor clarified his

statements by stressing that Petitioner was justified in his actions only when facing

"imminent fear of death or great bodily harm."

Finally, as noted in the discussion on Claim Two, *supra*, the trial court correctly

instructed the jury that Petitioner's use of force was not justifiable if Petitioner initially

provoked the use of force, "unless the force asserted toward [Petitioner] was so great that

he reasonably believed that he was in imminent danger of death or great bodily harm and

had exhausted every reasonable means to escape the danger[.]" (T. at 467).   The trial

judge specifically instructed that the jury must follow the law as contained in his jury

instructions. *Id.* at 475-76, 479-80.   Jurors are presumed to follow the court's instructions. *See e.g., Ingram v. Zant*, 26 F.3d 1047, 1053 (11th Cir. 1994) ("Because we presume that jurors follow such instructions, we must assume that the jury put aside any biases it may have had, applied the legal standards as enunciated in the jury instructions, and based its sentencing decision solely on the facts introduced at trial and sentencing."); *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) ("Jurors are presumed to follow the law as they are instructed.").   Petitioner cannot demonstrate prejudice from the prosecutor's closing argument.

Equally unavailing are Petitioner's remaining complaints regarding the prosecution's comments on the evidence and alleged "bolstering" of the state's witnesses. A considerable degree of leeway is allowed the prosecutor in closing argument. *Thomas v. State*, 326 So. 2d 413 (Fla. 1975).   Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. *Thomas v. State*, 748 So. 2d 970, 984 (Fla. 1999).   A review of the transcript confirms that each of the prosecutor's comments was based on testimony presented during the trial or on a reasonable inference drawn from the evidence.   Competent counsel could have chosen not to object to the prosecutor's claims that the state's "witnesses" (as opposed to "witness") testified that Petitioner had a knife at the beginning of the fight or that Petitioner's belligerent behavior was a threat to "start beating people up."   Likewise, a prosecutor is allowed to "robustly and vigorously argue the truthfulness of a witness whose credibility is under attack." *Jackson v. State*, 89 So. 3d 1011, 1019 (Fla. 4th DCA 2012).   The closing argument is not limited to "flat, robotic recitations of 'just the facts.'" *Diaz v. State*, 797 So. 2d 1286 (Fla. 4th DCA 2001). The prosecutor's statement that "you have to decide who is telling the truth" and "it comes

down to credibility" were not objectionable statements, and counsel was not ineffective for failing to object to them.

The state court's adjudication of Claim Four was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.   Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

### E.   Claims Five and Six

Petitioner asserts that defense counsel was ineffective for failing to impeach state witnesses with prior inconsistent statements (Doc. 2 at 24-32).   In Claim Five, Petitioner appears to assert that counsel erred by failing to question Thomas Stella ("Stella") about Brandon Kucia's ("Kucia's") trial testimony (which was inconsistent with Stella's deposition testimony). *Id.* at 25.   Petitioner also asserts that Stella should have been impeached with his initial statement to police in which he stated that he had not seen who stabbed him. *Id.* at 26.   Finally, Petitioner points to numerous minor inconsistencies between Kucia's police statement and his trial testimony regarding who chased DiMatteo after the bottle was thrown; the position of Kucia's forearm as he rolled on the ground with Petitioner; whether Kucia just fell on the ground or "broke free" and fell on the ground; or whether he saw Stella fighting with Petitioner's friends or just lying on the ground. *Id.* at 27-28.   In Claim Six, Petitioner re-asserts and expands upon his claim that Thomas Stella's "testimony at trial regarding what he told detectives in his initial police statement the night of the incident" differed from his testimony at trial. *Id.* at 31-32.   Specifically, Petitioner argues that at trial, Stella testified that he saw the person who stabbed him, but on the night of the incident, he told the police that he did not see the stabber. *Id.*   In his reply to Respondent's response to Claim Six, Petitioner argues that counsel was

ineffective for failing to argue that a *Giglio*[6] violation occurred when the state allowed Stella to testify inconsistently with his prior statement to police ([Doc. 28 at 30](#)).

Petitioner raised these claims in his Rule 3.850 motion, and the post-conviction court denied the claims. The post-conviction court noted that the record refuted Petitioner's claim that counsel failed to use Stella's and Kucia's deposition testimony to impeach their trial testimony (Ex. 20 at 11-22). The court also determined that counsel would not have been allowed to impeach a witness with the inconsistent statements of other witnesses. *Id.* Finally, the post-conviction court dismissed Petitioner's other assertions as either completely refuted by the record, or based upon non-material collateral matters:

> Next, Defendant alleges counsel failed to impeach Mr. Stella's trial testimony with his statement to police. The statements of the victims to police were not filed and are not part of the record before the Court. The purported statement to police by Mr. Stella, provided by Defendant with his motion, is attached. Defendant points out that in the statement, Mr. Stella told police he did not see who stabbed him. The record refutes this claim. Mr. Stella was asked about this inconsistency at trial, and clarified that he meant that he saw Defendant, but did not know his name. Counsel then attempted to impeach Mr. Stella with this inconsistent statement.

> Finally, Defendant argues that counsel failed to impeach Mr. Kucia's trial testimony with his statement to police. The statements of the victims to police were not filed and are not part of the record before the Court. However, based on the alleged statements Defendant cites in his motion, it does not appear that the alleged statements of Mr. Kucia to police are significantly inconsistent with his trial testimony, except in Defendant's interpretation of them. Defendant alleges Mr. Kucia gave inconsistent statements regarding when he was

---

[6] *Giglio v. United States*, 405 U.S. 150 (1972). A *Giglio* violation occurs when the prosecution solicits or fails to correct false or perjured testimony and "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 153–54 (quoting *Napue v. Illinois*, 360 U.S. 264, 271 (1959)) (ellipses in original).

first aware of problems with Defendant, whether he saw Defendant's friends chase after Mr. DiMatteo with Defendant, whether he put his arm out to stop Defendant or push himself off Defendant after he tackled Defendant, how long he lay on the ground after Defendant stabbed him, and whether he saw Mr. Stella fighting or on the ground. Relevant portions of Mr. Kucia's testimony is attached. These issues raised by Defendant are nonmaterial collateral matters. Mr. Kucia could not have been impeached regarding his answers on these subjects. Lawson v. State, 651 So. 2d 713, 715 (Fla. 2d DCA 1995). Counsel cannot be deemed ineffective for failing to raise a meritless issue. Teffeteller v. Dugger, 734 So. 2d 1009, 1023 (Fla. 1999). Defendant has failed to allege any facts that, if true, would establish either prong of Strickland.

(Ex. 20 at 12-13).   Florida's Second DCA affirmed the post-conviction court's denial of

this claim (Ex. 24).

The state court's determination that defense counsel cross-examined these witnesses is a finding of fact entitled to AEDPA deference. 28 U.S.C. § 2254(e) ("[A] determination of a factual issue by a State court shall be presumed to be correct."). During defense counsel's cross-examination of Stella, he used the police report and Stella's deposition to impeach or question: Stella's testimony about his identification of Petitioner as the stabber; Stella's assessment of Jonathon Feltman's ("Feltman's") level of intoxication; whether Stella had testified in his deposition that he "thought" he had gotten stabbed or was actually stabbed; and Stella's prior statement that he witnessed Feltman physically assault Petitioner (T. at 166-192).   Counsel used Kucia's prior statements to impeach or question him about Feltman's level of intoxication; the beer bottle thrown at Petitioner; and his lack of a statement to the police that Petitioner was wildly swinging his arms during the fight (contrary to what he testified to at trial). *Id.* at 217-225.   Petitioner has not presented "clear and convincing evidence" to rebut the state court's conclusion that "[w]hile counsel may not have picked apart every inconsistent

statement in as exhausting a manner as Defendant may have wished, the record shows counsel did use the depositions to impeach Mr. Stella and Mr. Kucia." (Ex. 20 at 12).

Moreover, Petitioner's assertion that counsel did not impeach Stella as to his initial statement to the police in which he claimed he had not seen his attacker is not supported by the record.   To the contrary, counsel questioned Stella about his statement to the police on two separate occasions.   On the first occasion, the prosecutor asked Stella to explain why he did not identify Petitioner to the police as his assailant, and Stella testified that he *had* identified Petitioner as the attacker, but that he did not know Petitioner's name at the time (T. at 166).   On cross examination, counsel asked:

> COUNSEL:   So you forgot, as well, to tell the police who wound up stabbing you?
>
> STELLA:   I don't know who it was, to tell you the truth.   I just knew the face and he had a tattoo on his arm.
>
> Q.   So that is not in the [police] statement then, as far as what the prosecutor just asked you?
>
> A.   No.

(T. at 166).   Afterwards, in response to counsel's questions, Stella admitted that he "didn't see Ryan Davis hurt anyone else, including [Stella]," with his own eyes. *Id.* at 188. Later in the cross examination, counsel re-raised the issue of Stella's failure to identify Petitioner as his assailant to the police:

> COUNSEL:   You also believe or testified that you think my client started this whole fight; correct?
>
> STELLA:   Physical fight.   Did I say that in the deposition?
>
> Q.   You are the witness, my friend.   I can't speak for you.   Was it your original impression Mr. Davis started this fight?

A.      I suppose so.

Q.      What do you mean "suppose"?

A.      It's kind of a tough situation.   Both sides started
        the yelling at each other.   I can't say.   Jason
        only threw the bottle out first.

Q.      It's kind of gray?

A.      Yeah, gray area.

Q.      You told the police you never saw the guy who
        did this, correct?

A.      Yeah.

Q.      You were asked, "You didn't see it at all?" And
        your answer was "No," correct?

A.      Correct, that's what I said in deposition, but they
        didn't ask me did I know who the guy was.
        They asked – they just said, "Do you know who
        the guy was?"   I said, no, I didn't know the
        name, because obviously when they had the
        pictures for me to choose who Ryan Davis was,
        I just knew he had a cross and I knew somewhat
        of his face.   I didn't know his name or anything.

Q.      Thank you.   Nothing further.

(T. at 191-92).   The post-conviction court reasonably concluded that defense counsel

questioned Stella about his initial statement to the police.

Equally unavailing is Petitioner's argument, raised in the reply, that counsel was

ineffective for failing to raise a claim based on *Giglio v. United States*.   Petitioner raised

this claim in his Rule 3.850 motion, and the post-conviction court denied it on the ground

that no *Giglio* violation occurred (Ex. 20 at 14).   Specifically, the post-conviction court

noted that Stella explained the inconsistencies in his testimony and that counsel

attempted to impeach Stella with those inconsistencies. *Id.*   The post-conviction court's

rejection of this claim was *per curiam* affirmed by Florida's Second District Court of Appeal

(Ex. 24).   Petitioner argues that this was an unreasonable finding of fact "given the clear and unequivocal pretrial statement by Stella that he was attacked by people from a car and that he did not see who attacked him." (Doc. 28 at 32).

To establish a *Giglio* violation, a defendant must demonstrate that: (1) the testimony was false; (2) the State knew the testimony was false; and (3) that the false testimony was material (that there was a reasonable likelihood that the false testimony could have affected the judgment of the jury). *DeMarco v. United States*, 928 F.2d 1074 (11th Cir. 1991).   In other words, to prevail on a *Giglio* claim, Petitioner "must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1312 (11th Cir. 2005) (citation omitted). The false testimony is material when it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *United States v. Dickerson*, 248 F.3d 1036, 1042 (11th Cir. 2001).

In the instant case, the jury was made aware of Stella's prior statement to the police that he did not know who stabbed him.   This statement contradicted his testimony at trial that it was Petitioner who stabbed him.   Stella attempted to explain the inconsistency by claiming that he meant to tell the police that he did not know the *name* of the person who stabbed him. Therefore, the jury knew that Stella changed his story. That Petitioner subjectively disbelieves Stella's explanation for his statement to the police or interprets Stella's statement and trial testimony differently than the post-conviction court, does not create a *Giglio* violation. Mere inconsistency of statements is not perjury, and not every inconsistent statement is material. *Tejada v. Dugger*, 941 F.2d 1551, 1557

(11th Cir.1991) (because the jury was made aware of inconsistent statement, the false testimony could not affect the judgment of the jury); *Hammond v. Hall*, 586 F.3d 1289, 1309 (11th Cir. 2009) (*Giglio* claim fails because information not suppressed).   Moreover, the government does not violate *Giglio* simply by offering the testimony of a witness who has made prior inconsistent statements or who has a poor reputation for truthfulness. *See, e.g., Hays v. Alabama*, 85 F.3d 1492, 1499 (11th Cir. 1996).   Under this reasoning, competent counsel could have declined to make a *Giglio* objection to Stella's testimony.[7]

Affording AEDPA deference to the state court's adjudication of Claims Five and Six, the claims are denied pursuant to 28 U.S.C. § 2254(d).

### G.    Claim Seven

Petitioner asserts that trial counsel was ineffective for failing to confer with him regarding his previous certificates for martial arts achievements and for failing to file a pretrial motion to exclude this information at trial (Doc. 2 at 33).   Petitioner asserts that he was surprised that the state would use against him certificates from classes he took when he was between the ages of six and eight and that his confusion on this issue made him look deceitful. *Id.* at 34-35.

---

[7] Further, a review of Stella's police statement indicates that counsel's failure to intensively question him about his statements to the police on the night of the incident could have been based upon sound trial strategy.   Stella told the police that he thought he was "grabbed" by some other people who showed up at the beginning of the fight in "like six cars" (Doc. 36 at Exhibit F).   Stella did not tell the police that any of the people who arrived in the cars stabbed him.   The Court notes that counsel could have reasonably decided that focusing on Stella's statement to the police could have been damaging to his self-defense claim if it was brought to the jury's attention that Stella told the police that six cars full of Petitioner's friends joined the fight. *See Castillo v. Sec'y, Dep't of Corr.*, 722 F.3d 1281 (11th Cir. 2013) ("The relevant question under *Strickland*'s performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

Petitioner raised this issue in his Rule 3.850 motion, and the post-conviction court denied the claim:

> Defendant argues counsel was ineffective for failing to confer with Defendant regarding his martial arts training, and failing to file a motion in limine or object to the introduction of evidence regarding his martial arts training. Defendant alleges that during cross examination, the State introduced certificates from Defendant's martial arts training as a child, produced by counsel during discovery without telling Defendant, which surprised Defendant. Defendant contends that counsel did not counter this evidence, did not file a motion in limine, and did not object to the introduction of this evidence. The record indicates that in response to Defendant's testimony that he did not feel he could defend himself against the people he was fighting, the State introduced the martial arts certificates, including one for edged weapons proficiency. This was proper impeachment. Counsel had no basis on which to file a motion in limine, or to object when Defendant "opened the door," and cannot be deemed ineffective for failing to raise a meritless issue. Teffeteller v. Dugger, 734 So. 2d 1009, 1023 (Fla. 1999). Even if counsel's performance was deficient, Defendant could not establish prejudice. The record shows that Defendant adequately countered the evidence himself by testifying that he took the classes when he was about six years old, had not been there since, and had forgotten what he learned there. Defendant has failed to allege any facts that, if true, would establish either prong of Strickland.

(Ex. 20 at 14-15) (internal citations to the record omitted). Although Petitioner appealed the denial of his Rule 3.850 motion to Florida's Second District Court of Appeal, he did not specifically address this claim in his appellate brief. Accordingly, Respondent argues that the claim is unexhausted (Doc. 16 at 19). Indeed, a petitioner must "fairly present" every issue raised in a post-conviction motion to the state's highest court, either on direct appeal or on collateral review. Picard v. Connor, 404 U.S. 270, 275 (1971).

Petitioner concedes that he did not specifically appeal the post-conviction court's rejection of this claim. Instead, he argues that under the authority of Darity v. Sec'y,

Dep't of Corr., 244 F. App'x 982 (11th Cir. 2007), he was not required to do so (Doc. 28 at 34.).   In *Darity*, the Eleventh Circuit concluded that a district court had erred by determining that Darity's ineffective assistance claims were procedurally barred for failure to appeal the denial of his Rule 3.850 claim.   Relying on *Webb v. State*, 757 So. 2d 608, 609 (Fla. 5th DCA 2000) and Rule 9.141(b)(2)(C) of the Florida Rules of Appellate Procedure, the Eleventh Circuit concluded that "a petitioner who does file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief." *Darity*, 244 F. App'x at 984.   However, *Webb* is no longer the decisional law of the Fifth District Court of Appeal. *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (receding from *Webb* and noting that the appellant had abandoned issues not addressed in his appellate brief).   To date, *Darity* itself has not been overturned by the Eleventh Circuit, and Respondent cites no authority regarding this issue from the Second District Court of Appeals, where Petitioner's appeal was heard.[8] The Court is not convinced that Petitioner failed to invoke one complete round of the state's established appellate review process by failing to expressly include the ground in his appellate briefs before the Second District Court of Appeal.   However, this Court need not further consider the issue of exhaustion because, pursuant to 28 U.S.C. § 2254, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies of the State."   This claim fails on the

---

[8]   In *Walton v. State*, 58 So. 3d 887 (Fla. 2d DCA 2011), the Second DCA recognized that "a *pro se* postconviction claimant can, by failing to raise such issues in his brief, waive a *Spera* claim."   It appears, however, that *Walton* is limited to claims based on *Spera v. State*, 971 So. 2d 754 (Fla. 2007), and this Court cannot conclude that *Walton* is a wholesale adoption of the Fifth DCA's reasoning in *Ward v. State*, 19 So. 3d 1060 (Fla. 5th DCA 2009).

merits.

In response to Petitioner's testimony that he did not feel he could defend himself from attack with his hands, the state introduced several martial arts certificates that Petitioner had received as a very young child (T. at 385, 386, 389-90).   The certificates were issued by a place called "Street Defense Institute" and certified that Petitioner had completed the "mandatory criteria in the science and study" of tournament competition, yellow belt, wood weapons, and edge weapons. *Id.* at 387-88.   Although Petitioner now argues that he was a young child when the certificates were issued, that is not a ground on which counsel could have objected to the certificates or sought their exclusion through a motion in limine.   Counsel's performance is not deficient for failing to make a meritless objection.   *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

Likewise, Petitioner, who was twenty-two years old at the time of the trial, testified that he had not been to karate lessons for ten or fifteen years and had forgotten everything he had learned there (T. at 386).   On redirect, counsel effectively pointed out the absurdity of the state's reliance on these certificates:

> COUNSEL:    Did you use the skills you learned as a trained knife fighter when you were six, seven, eight years old in this fight?
>
> PETITIONER:    Honestly, I don't remember taking any of those classes.   I don't remember going there.
>
> Q.    This going to karate, this was when you are six, seven, and eight?
>
> A.    Yes.
>
> Q.    You don't remember the specifics?

|     |     |
| --- | --- |
| A.  | No, sir. |
| Q.  | Did you use any of the trained mastery techniques you were taught to fight with? |
| A.  | No.   I wouldn't be trained like that when I was that young. |

*Id.* at 392.   As noted by the post-conviction court, Petitioner cannot demonstrate prejudice from counsel's failure to suppress the certificates because "Defendant adequately countered the evidence himself[.]" (Ex. 20 at 15).   Claim Seven fails to satisfy either *Strickland* prong and is denied.

## H.   Claim Eight

Petitioner asserts that counsel was ineffective for failing to prepare him for trial and present evidence of his fear of great bodily harm or death (Doc. 2 at 37).   Specifically, Petitioner asserts that Christopher Fort testified in his deposition that victim Stella said he was going to get a gun. *Id.* at 38.   Petitioner urges that "[t]here could be no more crucial factor to the Petitioner's claim of self-defense than his alleged victim saying he was going to get a gun[.]" *Id.* at 39.   Petitioner believes that "[t]his fact would have certainly solidified the Petitioner's fear of great bodily harm or death, and therefore, his resort to deadly force[.]" *Id.*

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction denied the claim on the ground that Petitioner could not show prejudice because the information in Fort's testimony would not have aided Petitioner's theory of self-defense:

> In the deposition, Mr. Fort testified that Defendant told people to be quiet "very rudely," not knowing Mr. Fort was standing there, that he heard the bottle break and saw Defendant chase Mr. DiMatteo, that a fight ensued with even numbers on both sides, he saw Defendant with something shiny in his hands, saw Defendant stab Mr. Feltman three times when Mr. Feltman was being held by Defendant's friend and was

helpless, and heard Mr. Stella say he was going to get a gun after Mr. Stella was out of the fight and was holding his stomach. In order for the information that Mr. Stella allegedly said he was getting a gun to have aided Defendant in his theory of self-defense, Defendant would have had to have heard Mr. Stella make this statement before he stabbed Mr. Stella. To the extent that Defendant requests leave to amend this claim, even if Defendant could, in good faith, truthfully amend this claim, he could not establish prejudice. Defendant was unaware of this statement until he obtained the deposition of Mr. Fort. If Defendant had heard this statement during the fight, Defendant would have testified as much. Defendant's testimony is silent as to any alleged statement by Mr. Stella. Further, Mr. Fort indicates in the deposition that Mr. Stella did not make the statement until after he had already been stabbed by Defendant, and was holding his stomach. Defendant has failed to allege any facts that, if true, would establish either prong of <u>Strickland</u>.

(Ex. 20 at 15-16) (internal citations to the record omitted).   The post-conviction court's

denial of this claim was *per curiam* affirmed by Florida's Second District Court of Appeal.

A review of the record supports the trial court's factual findings.   The only mention

of a gun in Fort's deposition is the following exchange:

COUNSEL:   By the way, do you have an opinion as to how these other two kids got stabbed since you've been watching Ryan Davis this whole time? How did he have time to stab these other two people when he's flying across people stabbing people in the head?

FORT:   That was toward the end of the fight.   It gives plenty of time for him to do at least five more.   It gives him enough time to stab someone else. The way I think it could have happened is when Kucia tackled Davis off, that's when Kucia could have got it and then if that's the truth, then Kucia was already stabbed when he was fighting Jimmy Becker and didn't know it at that time that he got stabbed.   **Stella was the second one out of the rumble which was about 30 seconds after Kucia saying – like he was holding his stomach.   He was saying, I'm going to get a gun, blah, blah, blah.   He was**

- 33 -

> talking about a gun, but he was – it was
> alcohol.   Alcohol.

(Ex. 2 at 50) (emphasis added).   Given this exchange, Petitioner has not overcome the presumption of correctness afforded the post-conviction court's factual finding that Fort testified that Stella made no mention of a gun until after he was stabbed in the stomach.

Under Florida law, evidence of a victim's unrelated acts of violence is admissible only if the defendant actually knew of the violent acts because it may reveal the reasonableness of the defendant's apprehension at the time of the incident. *Johnson v. State*, 718 So. 2d 848, 849 (Fla. 5th DCA 1998).   Under this reasoning, Fort's testimony about statements made by Stella <u>after</u> he was stabbed was not relevant because it shed no light on Petitioner's state of mind at the time Stella was stabbed. *See State v. Smith*, 573 So. 2d 306, 318 (Fla. 1990) (recognizing that testimony of persons other than the defendant regarding a victim's specific acts of violence is not relevant because "it sheds no light on the defendant's state of mind; it shows only that the victim had a propensity for violence.").   Testimony showing that Stella was angry and considered getting a gun after Petitioner had already stabbed him would not have resulted in a different outcome at trial.   Moreover, Petitioner testified at trial and described in detail the events surrounding the stabbings (T. at 338-345).   He never said that he heard Stella or anyone else at the party mention getting a gun – neither before nor after the altercation that led to Stella's stabbing.

The post-conviction court reasonably concluded that Petitioner could not show prejudice from counsel's failure to question Petitioner or anyone else about Fort's deposition testimony regarding Stella's statement. The state court's denial of this claim was neither contrary to *Strickland* nor based upon an unreasonable determination of the

facts.   Claim Eight is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[9]

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   The Florida Attorney General is **DISMISSED** as a named Respondent.

2.   Each Claim in the 28 U.S.C. § 2254 petition for habeas corpus relief filed by

---

[9]  Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id.* As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

Ryan Davis (Doc. 2) is **DENIED**, and this case is dismissed with prejudice.

3.      Petitioner is **DENIED** a certificate of appealability.

4.      The Clerk of Court is directed to terminate any pending motions, enter

judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 4th day of June, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Ryan Davis
Counsel of Record